IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

## JEFFREY T. BECKHAM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Hardin County**
**No. PC8138 C. Creed McGinley, Judge**

———————

**No. W2004-02900-CCA-R3-PC  - Filed November 2, 2005**

———————

The petitioner, Jeffery T. Beckham, was convicted by a jury of aggravated assault and received a five-year sentence.  This court affirmed his conviction and sentence on appeal.  <u>See</u> <u>State v. Jeffery T. Beckham</u>, No. W2002-02444-CCA-R3-CD, 2003 WL 22272376 (Tenn. Crim. App., at Jackson, Sept. 29, 2003), <u>perm.</u> <u>app.</u> <u>denied</u>, (Tenn. Mar. 8, 2004).  The petitioner sought post-conviction relief on various grounds, including ineffective assistance of counsel.  After an evidentiary hearing, the post-conviction court denied the petition for post-conviction relief.  For the following reasons, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and ALAN E. GLENN, JJ., joined.

Chadwick G. Hunt, Savannah, Tennessee, for the appellant, Jeffery T. Beckham.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; and Robert Radford, District Attorney General; and John W. Overton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts supporting the petitioner's underlying conviction were summarized by this Court on appeal as follows:

Mr. [Jamie] Davis [the victim] testified that as he was driving out of the parking lot of the Oil Express, located near K & M Market in Hardin County, Tennessee, he observed the defendant, his former brother-in-law, gesture toward him with his middle finger.  Mr. Davis' pregnant wife and their two-year-old daughter were

passengers inside his vehicle. Mr. Davis rolled down his window and asked the defendant "what his problem was." He stated he was unable to hear the defendant's response because the defendant's radio was loud.

Mr. Davis testified the defendant then walked to the bed of his pickup truck and retrieved either a shotgun or a rifle from his toolbox. The defendant placed the gun on his shoulder and aimed it toward Mr. Davis. Mr. Davis stated he was frightened and believed the defendant was going to shoot him. Mr. Davis testified he then drove to City Hall and reported the incident to the police.

Dina Davis, the victim's wife, testified that while she, her husband, and their daughter were exiting the parking lot, she observed the defendant gesture toward her husband with his middle finger. Her husband then rolled down his window and questioned the defendant regarding his reason for making the gesture. Mrs. Davis stated the defendant was "mouthing," but she was unable to hear what he said.

Mrs. Davis testified the defendant retrieved a gun from his toolbox in the bed of his truck. The defendant placed the gun on his shoulder and aimed it toward her husband. Mrs. Davis stated she was a "nervous wreck," and she pushed her daughter down in her car seat, while she ducked down in her seat. She further stated that as they were driving away, she looked out of the window and observed the defendant continuing to point the gun at them.

Officer Kenneth Thompson of the Savannah Police Department testified that after Mr. Davis reported the incident to him, he attempted to locate the defendant. The officer stated he observed the defendant's vehicle parked at Bobby Beckham's garage located near K & M Market. The officer then observed the defendant coming from the building while holding a gun. Officer Thompson drew his gun on the defendant and ordered him to lay down his weapon. The defendant complied and held up his arms.

Officer Thompson stated the gun in the defendant's possession was a Mossberg twelve-gauge shotgun which was loaded with four rounds, including one round in the chamber. The officer testified that when he questioned the defendant regarding his reason for possessing the loaded weapon, the defendant stated he planned to sell the gun.

Bobby Beckham, the defendant's cousin and owner of Beckham's Garage, testified he observed the defendant at the garage in possession of the gun. He stated that people occasionally sold and purchased guns at the garage.

The defendant testified that on the day of the incident, he had just returned from a hunting trip and was planning to sell his shotgun. He stated that while he was

-2-

getting gasoline, Mr. Davis drove up and began cursing at him. The defendant testified he may have opened his tool box and retrieved the shotgun. He denied pointing the shotgun at Mr. Davis. The defendant stated that upon returning from the hunting trip, he had unloaded his shotgun and reloaded it after Mr. Davis left.

At the conclusion of the jury trial, the petitioner was convicted of aggravated assault for pointing a shotgun at Mr. Davis. The trial court sentenced the petitioner to five years as a Range I standard offender. On direct appeal, the petitioner challenged the sufficiency of the evidence, his sentence as excessive and the trial court's failure to grant probation. This Court upheld both the petitioner's conviction and sentence on appeal. See State v. Jeffery T. Beckham, No. W2002-02444-CCA-R3-CD, 2003 WL 22272376 (Tenn. Crim. App., at Jackson, Sept. 29, 2003), perm. app. denied, (Tenn. Mar. 8, 2004). The petitioner's application for permission to appeal to the Tennessee Supreme Court was denied on March 8, 2004.

The petitioner subsequently filed a pro se petition for post-conviction relief, alleging ineffective assistance of counsel as well as other alleged constitutional deficiencies. Counsel was appointed to represent the petitioner and an amended petition was filed.

## Evidence at the Post-Conviction Hearing

The post-conviction court held a hearing on the petition on October 12, 2004. At the hearing, the petitioner's trial counsel testified that he had been working as an assistant public defender since 1988 and had been licensed to practice law since 1987. Trial counsel stated that he met with the petitioner on a number of occasions at the jail prior to his trial. Trial counsel remembered investigating the mental history of the petitioner and recalled that an evaluation had been requested and completed prior to his assignment to the case. Trial counsel testified that, based on his review of the mental health evaluation, he determined that there was no scientific basis to support an insanity defense or any mental health defense. Trial counsel felt that the petitioner was capable of assisting in his own defense. Trial counsel stated that he and the investigator discussed all of the possible defenses with the petitioner and remembered interviewing the petitioner's mother in preparation for trial. Trial counsel testified that the petitioner did not request his mother as a witness at trial. Trial counsel stated that the petitioner's mother did not offer any relevant testimony that would have helped the case. At one point prior to trial, the State offered a plea to the petitioner. Trial counsel relayed the offer to the petitioner and the petitioner refused the plea offer.

The petitioner's mother, Margaret White, testified that the petitioner had a "bad back" and took prescription drugs. Ms. White claimed that the drugs affected the petitioner's mental condition. She stated that she talked with trial counsel over the phone prior to the petitioner's trial. Ms. White stated that if she had testified at trial, she would have told the jury that her son was "sick" with back problems and that he took medication. Ms. White claimed that the victim harassed the petitioner prior to the incident at issue and that the victim even killed the petitioner's dog right in front of him.

Ted Anglin, the investigator with the public defender's office, testified that he had been an investigator since 1993. Mr. Anglin claimed that he met with the petitioner on several occasions and fully investigated the petitioner's claims that the victim harassed the petitioner prior to the incident at issue in the case. Mr. Anglin claimed that he did not find any relevant information that would assist trial counsel in the petitioner's defense.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. Subsequently, the post-conviction court issued the following findings of fact and conclusions of law:

> The petitioner, . . . , has filed a petition setting forth a number of grounds which he asserts entitles him to post-conviction relief. The petition is long and rambling and in addition to checking almost all of the grounds on the form designated by the Tennessee Supreme Court, the defendant has attached ten handwritten pages setting forth the facts in support of his claims for relief. One need only read these ten rambling pages to realize the frivolous and meritless nature of the petition. For example, he claims because sentencing occurred on his birthday that the court had purposely discriminated against the petitioner. The petitioner also claims that the Grand Jury as well as the jury venire was unconstitutionally impaneled because of discrimination against minorities. The petitioner produced absolutely no evidence to suggest in any way that there was any form of systematic exclusion of any minority.

> The only potential ground where proof was presented at the hearing concerns the petitioner's claim of ineffective assistance of counsel. The evidence presented at the hearing does not support this claim and fully demonstrates that the Public Defender who represented the defendant provided much more than constitutionally acceptable assistance of counsel. [Trial counsel], who represented the defendant and engaged in full and thorough discovery, investigated and explored every legitimate defense that might be offered on behalf of the defendant. Mental defenses were explored, but it was determined the defendant had at the General Sessions level been fully evaluated and determined he was competent and that an insanity defense could not be supported. Counsel met with the defendant on a number of occasions, talked to witnesses, discussed fully the defendant's constitutional rights including the decision of whether or not to testify. A legitimate plea offer was also relayed to the defendant which was rejected.

> The petitioner claims that [trial counsel] was ineffective for not calling his mother as a witness. Margaret White, the petitioner's mother, testified at the post-conviction hearing, and said that she had outlined the history of mental problems suffered by the defendant. As earlier stated the court ordered evaluation did not support any type of mental defense in this case. The substance of Mrs. White's testimony was that she wanted to tell the jury that her son was sick because of back problems and taking prescription drugs which in her opinion should have constituted

-4-

to a defense. After evaluating the testimony of Mrs. White, this court finds that this testimony would not have benefitted the defendant in a case of this nature where guilt is overwhelming. In fact, putting a close relative on with testimony of this nature might have very well made the state's case even stronger.

In summary, the court finds the petitioner was ably represented by counsel who engaged in appropriate discovery, fully investigated, and did everything that could have been reasonably done by counsel. This court finds there was no abridgment of any constitutional right of the petitioner and that his petition is hereby dismissed by the court.

On appeal, the petitioner challenges the post-conviction court's dismissal of the petition.

### Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may neither reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

### Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must

establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that trial counsel was ineffective because he "did not prepare an adequate defense by ignoring his medical and mental health background and failing to call Defendant's mother as a witness at trial." The State argues that the record does not preponderate against the judgment of the post-conviction court.

The evidence at the post-conviction hearing indicates that trial counsel reviewed the medical and mental health background of the petitioner. Trial counsel testified that the mental health evaluation was completed prior to the time he was assigned to represent the petitioner, but he remembered reviewing the report. After he reviewed the report, trial counsel did not feel there was a scientific basis for proceeding with an insanity defense. Additionally, trial counsel testified that he spoke with the petitioner's mother several times in preparation for trial and did not feel that her testimony would be beneficial. Trial counsel did not remember the petitioner specifically requesting his mother as a witness at trial. Implicit in the post-conviction court's denial of the petition is the determination that the testimony of trial counsel was credible. As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trial of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The evidence does not preponderate against the post-conviction court's credibility determination herein. The petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective. This issue is without merit.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE